

UNDER SEAL

FILED
CHARLOTTE, N

SEP 16 2020

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:20 cr 322-FDW |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| (1) LINDA DIANNE JOHNSON | ) | **UNDER SEAL** |
| (2) WANDA JACKSON BARKER | ) | |
| (3) OLAYINKA AGBOOLA | ) | 18 U.S.C. § 1956(h) (Money Laundering |
| a/k/a OLAKUNLE AGBOOLA | ) | Conspiracy) |
| | ) | |
| | ) | 18 U.S.C. § 1957 (Financial Transactions |
| | ) | in Illegal Proceeds) |
| | ) | |

THE GRAND JURY CHARGES:

At all relevant times:

### Introduction

1. The defendants, LINDA DIANNE JOHNSON ("JOHNSON"), WANDA JACKSON BARKER ("BARKER"), and OLAYINKA AGBOOLA ("AGBOOLA"), also known as OLAKUNLE AGBOOLA ("the defendants"), conspired with one another and with others known and unknown to carry out a scheme to launder at least $575,000 in proceeds of a fraudulent business email compromise scheme ("fraudulent scheme") in which co-conspirators tricked the United States Department of State, Victim #2, and others into wiring proceeds to bank accounts under JOHNSON's control. Upon receipt of the fraud proceeds, JOHNSON, BARKER, and AGBOOLA conducted financial transactions that unlawfully and unjustly enriched themselves and other co-conspirators.

### Business Email Compromise Fraud and Money Laundering

2. In general, a business email compromise ("BEC") scheme is a type of computer-intrusion scheme in which the intruder gains access to the victim's computer system and monitors the victim's email accounts to determine when large financial transactions are scheduled to take place. After the initial transfer or wiring instructions are conveyed between the legitimate parties to the transaction, the scammers send "spoofed" emails designed to appear as if they are coming from one of the legitimate parties, but which in reality are sent by the scammers as part of the fraudulent scheme. The spoofed emails typically contain a change of plans, instructing that the money being wired between the legitimate parties go to a different account—one that is under co-conspirators' control.

3. In order to collect the fraudulent proceeds, BEC fraudsters need bank accounts controlled by co-conspirators to receive the fraudulently misdirected wire payments. In

1

furtherance of a BEC scheme, co-conspirators recruit individuals, often called "money mules," to open bank accounts into which the diverted funds are deposited.

4. When the BEC scheme is successful and a victim company has wired money to a conspirator's bank account, conspirators act quickly to remove the fraudulent funds deposited into the accounts they control. The money mules are instructed to funnel the stolen money to specified accounts and individuals located both inside and outside of the United States. The money mules retain a portion of the total amount of funds.

### Individuals, Entities, and Victims

5. JOHNSON was a resident of Charlotte, North Carolina. On or about July 19, 2018, JOHNSON filed an Assumed Business Name Certificate with the Mecklenburg County Register of Deeds in the assumed business name Linda Dianne Johnson Enterprise. JOHNSON acted as a money mule and opened bank accounts in her name and in the name of Linda Dianne Johnson Enterprise that were used to receive fraudulent proceeds from the fraudulent scheme. JOHNSON then conducted financial transactions with these fraudulent proceeds in her accounts, including sending fraudulent proceeds to BARKER, AGBOOLA, and unindicted co-conspirators known to the Grand Jury, among others. JOHNSON kept a portion of the money for her own benefit.

6. BARKER was a resident of Athens, Texas. BARKER acted as a money mule, opened bank accounts in her own name, and conducted financial transactions with fraudulent proceeds that were deposited into those accounts during the fraudulent scheme. BARKER kept a portion of the money for her own benefit.

7. AGBOOLA was a resident of Chicago, Illinois. On or about June 16, 2011, AGBOOLA incorporated Fresh Automotive, LLC in Indiana. On or about September 14, 2018, AGBOOLA incorporated Skyline Logistics, LLC, in Illinois. AGBOOLA acted as a money mule and conducted financial transactions at a check casher in Chicago, Illinois with fraudulent proceeds that were sent to him during the fraudulent scheme. AGBOOLA kept a portion of the money for his own benefit.

8. R.R. is an unindicted co-coconspirator who provided direction to JOHNSON and BARKER about the receipt and disbursement of BEC fraud proceeds.

9. D.A. is an unindicted co-coconspirator and was a resident of Chicago, Illinois. On or about April 7, 2017, D.A. incorporated D.E. Corporation, doing business as L.L.P.C., in Illinois. D.A. acted as a money mule, opened bank accounts in her name and in the name of D.E. Corporation, dba L.L.P.C., and conducted financial transactions with fraudulent proceeds that were sent to those accounts during the fraudulent scheme. D.A. kept a portion of the money for her own benefit.

10. P.D., also known as H.G., is an unindicted co-coconspirator and was a resident of Washington, D.C. On or about December 21, 2017, P.D. incorporated P.G.A. Sales in Maryland using the name H.G. P.D. acted as a money mule, opened bank accounts in the name H.G. and

2

P.G.A. Sales, and conducted financial transactions with fraudulent proceeds that were sent to those accounts during the fraudulent scheme. P.D. kept a portion of the money for his own benefit.

11. The United States Department of State ("State Department") is a federal agency that has a Near Eastern Affairs Bureau that supports a wide array of grant programs throughout the Middle East and North Africa that advance U.S. interests and foreign policy goals.

12. The United States Grains Council ("U.S.G.C.") is a Near Eastern Affairs Bureau grantee. In September 2017, U.S.G.C. was awarded a $600,000 grant from the State Department to help the Tunisian agricultural sector refurbish a feeding and milling center.

13. Victim #2 is a non-profit organization based in Michigan that provides residential care to people with developmental disabilities and mental illnesses. Victim #2 received funds from Human Services Agency #1 and Human Services Agency #2.

14. Woodforest National Bank ("Woodforest") was a financial institution headquartered in The Woodlands, Texas, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

15. Wells Fargo Bank, N.A. ("Wells Fargo") was a financial institution headquartered in San Francisco, California, whose accounts were insured by the FDIC.

16. SunTrust Bank ("SunTrust"), now known as Truist Bank, was a financial institution headquartered in Atlanta, Georgia, who accounts were insured by the FDIC.

17. Local Government Federal Credit Union ("LGFCU") was a financial institution headquartered in Raleigh, North Carolina, whose accounts were insured by the National Credit Union Administration ("NCUA").

**Manner and Means**

18. As part of the fraudulent scheme, co-conspirators recruited JOHNSON, BARKER, and other known co-conspirators to open bank accounts into which the stolen funds were diverted and to funnel the proceeds of the fraudulent scheme to additional accounts controlled by the defendants and their co-conspirators. JOHNSON, BROWN, AGBOOLA, and other known co-conspirators provided false information to banks and other financial institutions when opening bank accounts and cashing checks. JOHNSON and BARKER's banks closed some of their bank accounts, providing notice that they had detected "fraud" in the transactions. The following bank accounts were opened or controlled by JOHNSON, BARKER, and other known co-conspirators and used in the fraudulent scheme to launder, and attempt to launder, fraud proceeds:

    a. On or about December 28, 2016, BARKER opened Woodforest bank account *9492 in her own name.

3

b. On or about January 23, 2018, JOHNSON opened LGFCU bank account *7156, in her own name.

c. On or about February 24, 2018, P.D. opened SunTrust bank account *0859, in the name of H.G, dba P.G.A. Sales, falsely using the name H.G.

d. On or about May 29, 2018, JOHNSON opened Wells Fargo bank account *2008, in her own name.

e. On or about May 7, 2018, JOHNSON opened SunTrust bank account *2380, in her own name and in the name Linda Dianne Johnson Enterprise. JOHNSON was listed as the owner and falsely informed the bank that the account was opened to help her son with funding a construction company.

19. JOHNSON and BARKER communicated with R.R. by means and facilities of interstate communications, including but not limited to, text messages and email. JOHNSON, BARKER, and R.R. communicated with each other about: the opening and closing of bank accounts, directions and confirmations about the receipt of funds into the bank accounts, directions for where and to whom to send funds, and proof of the execution of monetary transactions, among others.

### Victim #1

20. On or about May 14, 2018, the State Department received a Standard Form 270, Payment Request Form (SF-270), requesting payment of $281,962.46 from R.M., an employee of the U.S.G.C. This email contained a legitimate payment request and included U.S.G.C.'s legitimate SunTrust bank account.

21. On or about May 14, 2018, the State Department received a second, identical payment request for $281,962.46, including the SF-270, purportedly from R.M. This email was sent from an unknown co-conspirator posing as R.M.

22. On or about May 14, 2018, an unknown co-conspirator posing as R.M. sent an email to the State Department and asked that the legitimate U.S.G.C. SunTrust bank account number be changed to JOHNSON's SunTrust account *2380.

23. On or about June 8, 2018, $281,962.46 intended for the U.S.G.C. was fraudulently deposited by electronic funds or wire transfer to JOHNSON's SunTrust bank account *2380.

4

24. Upon receipt of the U.S.G.C. fraud proceeds, on or about the dates below, JOHNSON transferred and caused to be transferred the fraud proceeds out of her SunTrust bank account *2380 through a series of financial transactions as set forth below:

| Date | Recipient | Payee | Method of Transfer | Amount |
|---|---|---|---|---|
| 6/11/18 | BARKER | Wanda J. Barker | Official Check | $11,520.50 |
| 6/11/18 | JOHNSON | Johnson | Cash Withdrawal | $15,900 |
| 6/12/18 | AGBOOLA | Fresh Automotive, LLC | Official Check | $75,567.34 |
| 6/12/18 | P.D. | P.G.A. Sales | Official Check | $76,632.13 |
| 6/15/18 | BARKER | Wanda J. Barker | Official Check | $22,520.50 |
| 6/15/18 | D.A. | D.E. Corporation | Official Check | $75,567.34 |

25. On or about June 14, 2018, upon receipt of the fraud proceeds, P.D. wired $76,400.84 out of the P.G.A. Sales SunTrust bank account *0859 to a Chinese company in Beilun Ningbo, China.

26. On or about the dates below, upon receipt of the U.S.G.C. fraud proceeds, BARKER carried out the following financial transactions from her Woodforest bank account *9492, including:

    a. On or about June 11, 2018, BARKER withdrew $6,000;

    b. On or about June 15, 2018, BARKER caused a $10,000 cashier's check to be issued to O.B.;

    c. On or about June 20, 2018, BARKER withdrew $5,000;

    d. On or about June 25, 2018, BARKER wired $3,500 to R.P.K; and

    e. On or about June 29, 2018, BARKER caused a $10,661.81 cashier's check to be issued and withdrew $11,378.95.

27. On or about June 16, 2018, upon receipt of the U.S.G.C. fraud proceeds, AGBOOLA cashed the Official Check for $75,567.34 at a check casher in Chicago, Illinois by purchasing 13 money orders for $1,500 each and one money order for $500, totaling $20,000. AGBOOLA received more than $53,867 in cash. AGBOOLA provided the check casher with a fraudulent Bill of Sale purporting to show that JOHNSON purchased a 2017 Land Rover.

28. On or about June 18, 2018, D.A. deposited and caused to be deposited the $75,567.34 check into Chase bank account *3352, in the name of D.E. Corporation, dba L.L.P.C.

29. Between on or about June 19, 2018 and on or about June 29, 2018, upon receipt of the fraud proceeds, D.A. transferred and caused to be transferred the U.S.G.C. fraud proceeds out of her Chase bank account *3352 through a series of financial transactions, including more

than $38,000 in cash withdrawals, more than $8,500 in Zelle payments to A.M., a $20,000 cashier's check to A.M., and more than $11,000 in transfers to D.A.'s checking account *2367.

### Victim #2

30. On or about July 16, 2018, Human Services Agency #1 received an email requesting the form to change Victim #2's banking details. This email was sent from an unknown co-conspirator posing as P.H., the Executive Director of Victim #2.

31. On or about July 16, 2018, Human Services Agency #2 received an email requesting the form to change Victim #2's banking details. This email was sent from an unknown co-conspirator posing as P.H.

32. On or about July 18, 2018, an unknown co-conspirator posing as P.H. sent an email to Human Services Agency #1 and attached an Electronic Deposit form and a voided check requesting that Victim #2's bank account be updated to JOHNSON's Wells Fargo account *2008.

33. On or about July 18, 2018, an unknown co-conspirator posing as P.H. sent an email to Human Services Agency #2 and attached an Electronic Deposit form and a voided check requesting that Victim #2's bank account be updated to JOHNSON's Wells Fargo account *2008.

34. On or about July 23, 2018, $32,372.68 intended for Victim #2 was fraudulently deposited by electronic funds or wire transfer to JOHNSON's Wells Fargo bank account *2008.

35. On or about July 24, 2018, upon receipt of the Victim #2 fraud proceeds, JOHNSON transferred and caused to be transferred the fraud proceeds out her Wells Fargo bank account *2008 through a series of financial transactions as set forth below:

| Recipient | Payee | Method of Transfer | Amount |
|---|---|---|---|
| BARKER | Wanda J. Barker | Cashier's Check | $9,525.50 |
| AGBOOLA | Fresh Automotive | Cashier's Check | $20,320.46 |

36. On or about July 24, 2018, JOHNSON delivered and caused to be delivered the $20,320.46 check to AGBOOLA via FedEx.

37. On or about July 26, 2018, upon receipt of the Victim #2 fraud proceeds, BARKER wired $5,500 to R.P.K from her Woodforest bank account *9492. The purpose of the wire was purported educational expenses.

38. On or about August 3, 2018, $231,120.35 intended for Victim #2 was fraudulently deposited by electronic funds or wire transfer to JOHNSON's Wells Fargo bank account *2008.

6

39. On or about August 6, 2018, upon receipt of the Victim #2 fraud proceeds, JOHNSON transferred and caused to be transferred the fraud proceeds out of her Wells Fargo bank account *2008 through a series of financial transactions as set forth below:

| Recipient | Payee | Method of Transfer | Amount |
|---|---|---|---|
| BARKER | Wanda J. Barker | Cashier's Check | $38,572.60 |
| AGBOOLA | Fresh Automotive | Cashier's Check | $48,187.34 |
| A.R.S., Inc. | A.R.S., Inc. | Cashier's Check | $38,525.50 |

40. On or about the dates below, upon receipt of the Victim #2 fraud proceeds, BARKER carried out the following financial transactions from her Woodforest bank account *9492, including:

   a. On or about August 8, 2018, BARKER wired $7,000 to R.P.K. The purpose of the wire was purported home renovations.

   b. On or about August 24, 2018, BARKER wired $7,000 to R.P.K. The purpose of the wire was purported car repair.

   c. On or about September 6, 2018, BARKER wired $7,000 to R.P.K. The purpose of the wire was purported school expense.

41. On or about August 6, 2018, JOHNSON delivered and caused to be delivered the $48,187.34 check to AGBOOLA via FedEx.

42. On or about August 7, 2018, JOHNSON transferred and caused to be transferred fraud proceeds out of her Wells Fargo bank account *2008 as set forth below:

| Recipient | Payee | Method of Transfer | Amount |
|---|---|---|---|
| JOHNSON | Linda D. Johnson | Cashier's Check | $37,062.50 |
| AGBOOLA | Fresh Automotive | Cashier's Check | $63,625.50 |

43. On or August 7, 2018, upon receipt of the Victim #2 fraud proceeds, JOHNSON deposited or caused to be deposited the $37,062.57 cashier's check into her LGFCU bank account *7156. The next day, JOHNSON purchased a $33,350 cashier's check made payable to I.N.F LLC.

44. On or about August 7, 2018, JOHNSON delivered and caused to be delivered the $63,625.50 check to AGBOOLA via FedEx.

45. On or about August 7 and 10, 2018, upon receipt of the fraud proceeds, AGBOOLA cashed the Official Check for $48,187.34 at a check casher in Chicago, Illinois by purchasing 15 money orders for $1,500 each, one money order for $1,000 and one money order for $500, totaling $24,000. AGBOOLA received more than $22,000 in cash. AGBOOLA provided the check casher with a fraudulent Bill of Sale purporting that JOHNSON had purchased a 2016 BMW.

7

46. On or about August 16, 2018, upon receipt of the fraud proceeds, AGBOOLA cashed the Official Check for $63,625.50 at a check casher in Chicago, Illinois by purchasing 6 money orders for $1,500 each and one money order for $1,000, totaling $10,000. AGBOOLA received more than $50,000 in cash. AGBOOLA provided the check casher with a fraudulent Bill of Sale purporting that JOHNSON purchased a 2016 Land Rover.

47. On or about August 20, 2018, $33,321.20 intended for Victim #2 was fraudulently deposited by electronic funds or wire transfer to JOHNSON's Wells Fargo bank account *2008.

## COUNT ONE
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

48. The Grand Jury realleges and incorporates by reference herein the allegations contained in paragraphs one through forty-seven of the Bill of Indictment, and further alleges that:

49. Beginning as early as February 2013, the exact date being unknown, and continuing until on or about the date of this Indictment, in the Western District of North Carolina, and elsewhere, the defendants,

> (1) LINDA DIANNE JOHNSON
> (2) WANDA BARKER
> (3) OLAKUNLE AGBOOLA

did knowingly combine, conspire, and agree together and with other persons known and unknown to the Grand Jury to commit offenses against the United States, namely, violations of 18 U.S.C. §§ 1956 and 1957, that is:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is wire fraud, a violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud, a violation of 18 U.S.C. § 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of 18, United States Code, Section 1956(a)(l)(B)(i); and

b. to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminal derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, a violation of 18 U.S.C. § 1343and conspiracy to commit wire fraud, a violation of 18 U.S.C. § 1349, in violation of Title 18, United States Code, Section 1957.

## Objects of the Conspiracy

50. It was a part and an object of the conspiracy for the defendants, and other known and unknown co-conspirators, to unlawfully and unjustly enrich themselves by obtaining fraud proceeds from victims.

## Manner and Means

51. The defendants and their co-conspirators carried out the conspiracy in the manner and means described in paragraphs one through forty-seven of this Bill of Indictment, among others.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWO AND THREE
## Money Laundering
## (18 U.S.C. § 1957)

52. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through forty-seven of the Bill of Indictment, and further alleges that:

53. On or about the dates set forth below, in the Western District of North Carolina, and elsewhere, LINDA DIANNE JOHNSON did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal of funds from her SunTrust bank account *2380, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and conspiracy in violation of 18 U.S.C. § 1349, that is:

| Count | Approximate Date | Transaction Type | Amount |
|---|---|---|---|
| 2 | 6/12/18 | Official Check to Fresh Automotive, LLC | $75,567.34 |
| 3 | 6/15/18 | Official Check to Wanda J. Barker | $22,520.50 |

All in violation of Title 18, United States Code, Section 1957 and 2.

9

Case 3:20-cr-00322-FDW-DSC   Document 3   Filed 09/16/20   Page 9 of 10

# NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

    a.    All property involved in the violations set forth in this Bill of Indictment or traceable to property involved in such violations; and

    b.    If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment in the amount of at least $578,776.69, such amount constituting the amount involved in the violations set forth in this Bill of Indictment.

A TRUE BILL:

_____
FOREPERSON

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*Caryn Finley*
_____
CARYN FINLEY
ASSISTANT UNITED STATES ATTORNEY

*Graham Billings*
_____
GRAHAM BILLINGS
ASSISTANT UNITED STATES ATTORNEY